### BERNARD HYMAN *v.* A. J. CAMERON et al.

1. CHANCERY—PRACTICE—HOW RELIEF OBTAINED.—The only remedy for a wrong threatened, or done, or to enforce a right in a court of equity is to bring the appropriate original suit and interplead with the adversary in respect of it; or, if a suit is already pending touching the subject matter, to apply to be made a party thereto, and either, as a co-complainant, or defendant, introduce into the suit the right which is claimed.

2. SAME—SAME—BILL OF INTERVENTION UNKNOWN.—A bill of intervention, by which a stranger seeks to be introduced as a party to another suit in chancery, for the purpose of amending a bill which the complainant has abandoned, and then to conduct that suit in his own name, is unknown in chancery practice.

APPEAL from chancery court of Jefferson county. ELLIS, Chancellor.

*William F. Mellen,* for appellant.

*Martin & Wharton,* for appellees.

SIMRALL, J.:

Bernard Hyman complains in this court, of the decision of the chancery court, sustaining a demurrer to his bill of intervention, and dismissing it. This is the state of the pleadings: Henry C. Lindsay brought his bill in chancery against Duncan, Burch, Cameron and Mrs. M. J. Wade, in which he alleges, that, in 1861, he bought at the sale under probate decree, made by Robert Duncan, the administrator of S. B. Owens, deceased, a parcel of real estate in the town of Fayette, with John H. Duncan and Burch his sureties on the bonds for the purchase-money; and, in order to indemnify his sureties, he executed a deed in trust to Cameron, trustee, covering this and other property, and

that Cameron, the trustee, was about, at the request of the sureties, to make a sale of the property. When neither of them had paid the debt· or any part of it, neither had been damnified, nor could be, because both were insolvent to this bill. A demurrer was sustained and leave given the complainant to amend.

At this point Hyman applied by petition for leave to file a bill of intervention, stating that he was a purchaser from Lindsay of the premises, and in possession. That Lindsay had abandoned his suit with a view to defraud and injure him ; that there were good causes of amending Lindsay's bill, which he desired to make. The court permitted him to file his bill, in which he states, that he had paid Lindsay the purchase-money,· and had brought suit to force him to make a deed ; that a decree to that effect had been rendered. Referring to Lindsay's bill and its contents, the demurrer sustained thereto and the leave granted to amend. He alleges that Lindsay had declined to amend for the purpose of defrauding and oppressing him, and, therefore, asks that he may be allowed to intervene and make the amendments to Lindsay's bill ; and thereupon, in addition to the allegations to the bill, he proceeds to set out addi‐ tional matter as amendments thereof, to wit : that Duncan, the administrator of Owens' estate, had deceased, and that Mrs. Wade, his sister, had been appointed administratrix in his stead, and had become possessed of the bonds given by Lindsay for the land; that she had no title to these bonds ; that if a sale should be made the money would be paid to Mrs. Wade, which would be no satisfaction of the debt to Owens' estate. That no notice of the trust sale was given by Mrs. Wade or on her behalf. She further states that he has lost part of the land recovered from him in an ejectment suit, having a front width of eighteen feet, which was worth $1,600, which ought to be credited on the debt to· Owens' estate ; that one Adair is the administrator *de bonis non* of Owens' estate.

It is a novel proceeding in chancery to allow a stranger to

a suit to become a party for the purpose of amending a bill which the complainant has abandoned, and then conduct the suit in his own name.    Intervention is a civil law term, a pleading familiar in that system.    It is the act by which a person, not originally a party, "comes between them," claiming an interest in the subject-matter, and interposes his claim, which is generally adverse to one or both of the original litigants.    It is unknown to the common-law courts of law and equity, but has been admitted in the practice of the ecclesiastical courts, which closely resembles that of the civil law.    2 Chitty's Gen. Pr. 492.

The only remedy for a wrong threatened or done, or to enforce a right in a court of equity, is to bring the appropriate original suit, and interplead with the adversary in respect of it ; or, if a suit is already pending touching the subject-matter, to apply to be made a party thereto, and either as a co-complainant or defendant introduce into the suit the right which is claimed.

Where there are two or more claimants of a debt or other matter, a party may resort to chancery for his protection against the conflicting claimants, and the harrassment of several suits, and insist that the claimants shall litigate their demands, and submit to the decision of the court their respective rights.    But the bill of interpleader rests upon the fundamental principle that the complainant is the mere holder of a stake, which is to be contested for by the other parties, he standing wholly indifferent between them.    If the complainant seeks relief in the premises against either party, or asserts a right or claim against either or both of them, it would be fatal to his bill.    2 Story's Eq. Jur., §§ 807, 808.

The objects of this proceeding by Hyman are to oppose the right of Cameron, the trustee, to sell the property, and, secondly, if that should be done, to settle what is due of the original purchase-money to Owens, administrator, by crediting the bonds with the payment made by Lindsay,

and also with $1,600, the value of the fraction of land recovered in the ejectment suit.

Hyman, as purchaser of the property from Lindsay, is deeply interested in the subjects brought into this litigation. If the terms and conditions of the indemnity executed by Lindsay for the protection of his sureties is like the deed in trust in a case decided at this term * he would be concerned to prevent the sale by the trustee Cameron, for until the sureties had paid, or been damnified, there would be no breach of the condition, and no right to sell. On demurrer to the bill, we must gather the terms of the deed in trust, from its allegations, and not by a reference to the deed which is made an exhibit. So, too, if there was a combination and conspiracy to pay the proceeds of a sale to Mrs. Wade, administratrix of Duncan, instead of Adair, the administrator *de bonis non* of Owens, he would be interested to disembarrass his land from the statutory lien, by having a proper appropriation of the money raised by the trust. sale. As to the credit claimed for the value of the land recovered from him by a paramount adversary title, that claim would not be well founded, unless the administrator, as such, warrants the title, and thereby binds the estate. We understand the opposite to be the settled doctrine, and *caveat emptor* applies. The purchaser takes the risk of the title being in the intestate at the time of his death. But whatever may be the equity in any view of the allegations made in Hyman's bill, we are satisfied that such a pleading has no place in equity jurisprudence, and that the only remedy which he could resort to was an original bill against all these parties.

Upon this appeal we cannot notice the decision of the court, upon the demurrer, to the original bill.

*Let the decree be affirmed.*

---

* See Osborn et al. v. Noble, *supra*, p. 449.